**Patrick Kershisnik**
**Kershisnik Law, PLLC**
380 S. 4th Street, Ste. 102
Boise, Idaho 83702
Telephone: (208) 472-2383
Email: patrick@lawboiseid.com

**Patrick H. Peluso***
**Stephen A. Klein***
**Woodrow & Peluso, LLC**
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Email: ppeluso@woodrowpeluso.com
         sklein@woodrowpeluso.com

*Pro Hac Vice admission to be filed*

*Attorneys for Plaintiffs and the Alleged Classes*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFFERY GIBBS, TOBY HOY, and SHARON MCCULLAGH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIVEFREE EMERGENCY RESPONSE, INC., d/b/a MEDIBUTTON, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jeffery Gibbs ("Gibbs"), Toby Hoy ("Hoy"), and Sharon McCullagh ("McCullagh") (collectively "Plaintiffs") bring this class action complaint against Defendant LiveFree Emergency Response, Inc., d/b/a MediButton, Inc. ("Defendant" or "MediButton") to:

(1) stop Defendant's practice of placing calls (either directly or via third-party agents) using an artificial or pre-recorded voice to the cellular telephones of consumers nationwide without their prior express consent; (2) enjoin Defendant from continuing to place pre-recorded telephone calls to consumers who did not provide their prior express written consent to receive them, or who revoked such consent; and (3) obtain redress for all persons injured by Defendant's conduct. Plaintiffs also seeks an award of statutory damages to the members of the Class, plus court costs and reasonable attorneys' fees.

Plaintiffs, for their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1. Plaintiff Gibbs is a natural person over the age of eighteen (18) residing in Rutherfordton, Rutherford County, North Carolina.

2. Plaintiff Hoy is a natural person over the age of eighteen (18) residing in Dallas Center, Dallas County, Iowa.

3. Plaintiff McCullagh is a natural person over the age of eighteen (18) residing in Lakeview, Lake County, Oregon.

4. Defendant LiveFree Emergency Response, Inc., d/b/a MediButton, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3411 Hawthorne Road, Pocatello, Idaho 83201.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a

federal statute.

6.  Jurisdiction is likewise proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.* because the alleged Classes consist of over 100 people, there is minimal diversity, and the claims of the class members, when aggregated, exceed $5,000,000. Further, none of the exceptions to CAFA jurisdiction applies here.

7.  This Court has personal jurisdiction over Defendant because it conducts business in this District, is headquartered and registered to do business in this District, solicits significant business in this district, has entered into business contracts in this district, and a significant portion of the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

8.  Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered in this District, solicits a significant amount of business within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in and/or emanated from this District.

**INTRODUCTION**

9.  As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

10. The National Do Not Call ("DNC") Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those

numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. Telephone Consumer Protection Act of 1991, Pub. L. No. 102–243, 105 Stat. 2394 at § 2(3).

13. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in February 2022 alone, at a rate of 134.3 million per day.[1]

14. "Robocalls and telemarketing calls are currently the number on source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[2] "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1881,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[3]

## COMMON ALLEGATIONS

---

[1] February 2022 Nationwide Robocall Data, YOUMAIL ROBOCALL INDEX, https://robocallindex.com (last visited March 2, 2022).

[2] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[3] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureauconsumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf

15. MediButton is a company that sells medical alert devices to consumers, describing itself as "the premier healthcare monitoring device distributor in North America."[4]

16. As part of its business practice, MediButton places telemarketing calls to consumers in order to solicit them to purchase its medical devices.

17. Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and generate leads for the sale of its products, MediButton conducted (and continues to conduct) a wide-scale telemarketing campaign that repeatedly makes unsolicited autodialed phone calls to consumers' telephones, including cellular telephones, all without any prior express consent to make such calls. The calls are also made to consumers who registered their phone numbers on the National DNC registry.

18. To make matters worse, MediButton places these calls to telephones using an artificial or pre-recorded voice without consumers' prior express written consent—which violates the TCPA.

19. The TCPA and its implementing regulations prohibit companies and persons, such as Defendant, from placing calls using an "artificial or prerecorded voice" to cellular telephones without first obtaining prior express consent. Defendant has violated, and continues to violate, the TCPA and its regulations by placing autodialed calls to cellphone subscribers who have not given prior express consent, orally or in writing, to receive such calls.

20. In an effort to obtain leads for its products and services, MediButton (or agents working on its behalf) made prerecorded calls to the cellular phones of Plaintiffs and other members of the classes in violation of the TCPA. Each of the Plaintiffs received telemarketing calls from MediButton that featured an automated or prerecorded voice, despite the fact that they

---

[4] https://www.medibutton.com/

did not give prior express consent to receive such calls and that they had previously registered their phone numbers on the DNC.

21. The TCPA was enacted to protect consumers from unauthorized calls like those alleged in this Complaint: prerecorded calls placed to cellphone numbers without each consumer's prior express written consent, and despite consumers registering their phone numbers on the National DNC Registry.

22. At no time did Defendant obtain prior express consent from Plaintiffs or any of the Class members to receive telemarketing calls using an artificial or prerecorded voice.

23. Defendant knowingly made, and continues to make, telemarketing calls without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and the members of the alleged Class, it also intentionally and repeatedly violated the TCPA. Defendant was, and is, aware that the prerecorded calls described herein were made to consumers like Plaintiffs who have not consented to receive them and who have registered their phone numbers on the National DNC.

24. By making the calls at issue, Defendant cause Plaintiffs and the members of the Classes actual harm, including the aggravation, nuisance, and invasions of privacy that result from the receipt of such calls, the wear and tear on the cellphones, consumption of battery life, lost cellular minutes, loss of value realized for monies paid to their wireless carriers for the receipt of such calls, and in the form of diminished use, enjoyment, value, and utility of their telephones and telephone plans. Furthermore, Defendant made the calls knowing they interrupted and interfered with Plaintiffs' and the other Class members' use and enjoyment of, and the ability to access, their cellphones, including the related data, software, and hardware components.

25. To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval, and/or Defendant ratified the placement of any such calls.

26. To redress these injuries, Plaintiffs, on behalf of themselves and two Classes of similarly-situated individuals, bring this suit under the TCPA, which prohibits unsolicited prerecorded and/or autodialed calls to cellphones. On behalf of the Classes, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized autodialed calling activities and an aware of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

## PLAINTIFF GIBBS' ALLEGATIONS

27. Plaintiff Gibbs is the subscriber to and customary user of the personal cellular telephone number ending in 4919.

28. Gibbs' phone number ending in 4919 has been registered on the National DNC since January 26, 2009.

29. On May 18, 2021, Gibbs received a call from MediButton to his 4919 number from (919) 359-1399. When he answered the call, Gibbs was greeted with a voice-activated prerecorded message system offering Defendant's medical device products and services at a rate of $39.99 a month. On information and belief, the phone call was an "avatar" call, in which Plaintiff was presented with different pre-recorded audio recordings of an individual as he responded to and asked questions. Gibbs ultimately stated that he wasn't interested and hung up.

30. Between May 19, 2021 and July 9, 2021, Gibbs received and answered a total of nineteen (19) calls from MediButton to his 4919 number, from the following numbers:

- May 19, 2021: one call from (919) 359-4115;

- May 28, 2021: one call from (919) 359-6321;

- June 1, 2021: one call from (919) 359-4215;

- June 8, 2021: one call from (919) 359-5859, one call from (919) 359-5649;

- June 10, 2021: one call from (919) 359-1862;

- June 16, 2021: one call from (919) 359-8868;

- June 23, 2021: one call from (919) 359-1777, one call from (919) 359-4494;

- June 24, 2021: one call from (919) 359-2387;

- June 25, 2021: one call from (919) 359-6586, one call from (919) 359-9515;

- July 7, 2021: one call from (919) 359-2090, one call from (919) 359-5187; one call from (919) 359-8056;

- July 7, 2021: one call from (919) 359-1779, one call from (919) 359-3417; one call from (919) 521-3931; and

- July 9, 2021: one call from (919) 359-8792.

Each call featured the same prerecorded voice message system offering Defendant's medical device products and services at a rate of $39.99 a month. On information and belief, these phone calls were "avatar" calls, in which Plaintiff was presented with different pre-recorded audio recordings of an individual as he responded to and asked questions. In response to each call, Gibbs stated that he wasn't interested and hung up.

31. Between June 28, 2021 and July 8, 2021, Gibbs received nine additional calls from substantially identical numbers that he rejected:

- June 28, 2021: one call from (919) 359-9031;

- June 30, 2021: two calls from (919) 359-3925, one call from (919) 359-4823;

- July 1, 2021: one call from (919) 359-2102, one call from (919) 359-8426;

- July 7, 2021: one call from (919) 359-3378, one call from (919) 359-2388; and

- July 8, 2021: one call from (919) 359-9331.

On information and belief, these calls likewise came from MediButton in an attempt to market its products and services to Plaintiff.

32. Plaintiff Gibbs does not have a relationship with MediButton, has never provided his telephone number to MediButton, and has never requested that Defendant or anyone acting on Defendant's behalf, place prerecorded calls to him or offer him its services. Gibbs has never provided any form of consent for MediButton to place prerecorded and/or autodialed calls to him and has no other prior relationship with Defendant. Simply put, Gibbs never provided any prior express written or oral consent to be called at all.

### PLANTIFF HOY'S ALLEGATIONS

33. Plaintiff Hoy is the subscriber to and customary user of the personal cellular telephone number ending in 0280.

34. Hoy's phone number ending in 0280 has been registered on the National DNC since January 22, 2021.

35. On March 30, 2021, Hoy received a call from MediButton to his 0280 number from (888) 237-0837. When he answered the call, Hoy was greeted with a voice-activated prerecorded message system offering Defendant's medical device products and services. On information and belief, the phone call was an "avatar" call, in which Plaintiff was presented with different pre-recorded audio recordings of an individual as he responded to and asked questions.

36. Following the call, investigation by Plaintiff's attorneys revealed that the number traced back to MediButton. When called back, a representative provided the website www.medibutton.com for additional information.

37. Plaintiff Hoy does not have a relationship with MediButton, has never provided his telephone number to MediButton, and has never requested that Defendant or anyone acting on Defendant's behalf, place prerecorded calls to him or offer him its services. Hoy has never provided any form of consent for MediButton to place prerecorded and/or autodialed calls to him and has no other prior relationship with Defendant. Simply put, Hoy never provided any prior express written or oral consent to be called at all.

## PLAINTIFF MCCULLAGH'S ALLEGATIONS

38. Plaintiff McCullagh is the subscriber to and customary user of the personal cellular telephone number ending in 1614.

39. McCullagh's phone number ending in 1614 has been registered on the National DNC since March 30, 2021.

40. On May 11, 2021, McCullagh received two calls from MediButton to her 1614 number—one from (541) 947-2878, and one from (541) 947-5476. On each call, McCullagh was greeted with a voice-activated prerecorded message system offering Defendant's medical device products and services. On information and belief, the phone calls were "avatar" calls, in which Plaintiff was presented with different audio recordings of an individual as she responded to and asked questions.

41. On May 14, 2021, McCullagh received a call to her 1614 number from (541) 947-6267. When she answered the call, McCullagh was greeted with a voice-activated prerecorded message system offering Defendant's medical device products and services. On information and belief, the phone call was an "avatar" call, in which Plaintiff was presented with different audio recordings of an individual as she responded to and asked questions.

42. On May 18, 2021, McCullagh received a call to her 1614 number from (541) 947-1131. When she answered the call, McCullagh was greeted with a female voice-activated prerecorded message system offering Defendant's medical device products and services. The automated voice gave the name "Amy" and told Plaintiff to hold for an associate. Plaintiff next heard a male robot voice, offering a medical alert system that it described as a $400 system that would save Plaintiff's life, and that she would get the system for free if she agreed to pay $39.99 a month for related services. McCullagh asked for a name and after several inquiries the voice gave the name "Ronnie Johnson." On information and belief, this phone call consisted of two separate "avatar" calls, in which Plaintiff was presented with different audio recordings of an individual as she responded to and asked questions. Following this call, Plaintiff attempted to call the number back and the line was apparently disconnected.

43. The next day, on May 19, 2021, McCullagh received another call to her 1614 number from (541) 947-5604. When she answered the call, McCullagh was greeted with a voice-activated prerecorded message system offering Defendant's medical device products and services. On information and belief, the phone call was an "avatar" call, in which Plaintiff was presented with different audio recordings of an individual as she responded to and asked questions. Following this call, an attempt to call the number back reached a recorded voice message.

44. The following day, on May 20, 2021, McCullagh received another call to her 1614 number from (541) 947-8445. When she answered the call, McCullagh was greeted with a voice-activated prerecorded message system offering Defendant's medical device products and services. On information and belief, this phone call was an "avatar" call, in which Plaintiff was presented with different audio recordings of an individual as she responded to and asked

questions. Plaintiff stated that she wasn't interested and hung up. Following the call, Plaintiff attempted to call the number back and the line was apparently disconnected.

45.  Over the next week, McCullagh received several more calls from MediButton to her 1614 number, from the following numbers:

- May 21, 2021: one call from (541) 947-6734; one call from (541) 947-6524;
- May 24, 2021: one call from (541) 947-1588; one call from (541) 947-2656; and
- May 26, 2021: one call from (541) 947-1083; one call from (541) 947-3373.

Each call featured the same prerecorded voice message system offering Defendant's medical device products and services. On information and belief, these phone calls were "avatar" calls, in which Plaintiff was presented with different audio recordings of an individual as she responded to and asked questions.

46.  On May 27, 2021, McCullagh received a call to her 1614 number from (541) 947-8115. Like the call on May 18, 2021, McCullagh was greeted with a female voice-activated prerecorded message system using the name "Amy" that offered Defendant's medical device products and services. Plaintiff was then transferred to a male voice-activated prerecorded message system using the name "Ronnie Johnson," before being transferred to a live representative named Allison. Allison provided the phone number (813) 492-8627 as a call-back number. Following the call, McCullagh called the number provided and spoke with a representative named Brenda. Brenda asked why Plaintiff wished to cancel her order, and Plaintiff replied that she relied on social security income and did not have the money for Defendant's system. Brenda stated that she would reverse the charges, which had already gone through. After a subsequent call, on which Plaintiff was informed that the charges were handled by another company, McCullagh cancelled her debit card and ordered a new one.

47.     Plaintiff McCullagh did not have an existing relationship with MediButton, has never provided her telephone number to MediButton, and has never requested that Defendant or anyone acting on Defendant's behalf, place prerecorded calls to her or offer her its services. McCullagh has never provided any form of consent for MediButton to place prerecorded and/or autodialed calls to her and has no other prior relationship with Defendant. Simply put, McCullagh never provided any prior express written or oral consent to be called at all.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the Classes defined as follows:

> **Prerecorded No Consent Class**: All persons in the United States who (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's telephone; (3) for the purpose of selling Defendant's products and services; (4) using the same pre-recorded voice technology that was used to call Plaintiffs; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call Plaintiffs.
>
> **DNC Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiffs, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claim they supposedly obtained prior express written consent to text Plaintiffs, or (b) they did not obtain prior express written consent.

Excluded from the Classes are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's

immediate family; (3) persons who execute and file a timely request for exclusion; (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (5) the legal representatives, successors, and assigns of any such excluded person. Plaintiffs anticipate the need to potentially amend the class definitions following an appropriate period of class discovery.

49.   **Numerosity**: The exact number of the members of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed calls using an artificial or prerecorded voice to thousands of consumers who fall into the defined Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

50.   **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)   Whether Defendant's conduct violated the TCPA;

(b)   Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent;

(c)   Whether Defendant systematically placed multiple calls to Plaintiffs and other consumers whose telephone numbers were registered with the DNC for more than thirty days;

(d)   Whether the calls featured an artificial or pre-recorded voice;

  (e) Whether a third party made the calls on Defendant's behalf for Defendant's benefit;

  (f) Whether the Plaintiffs and the other members of Classes are entitled to statutory damages; and

  (f) Whether Defendant acted willfully so as to require an award of treble damages.

51. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct. Plaintiffs are members of the Classes.

52. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experience in complex class actions, specifically class actions under the TCPA. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to the Plaintiffs.

53. **Superiority and Manageability**: A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by and available to the individual Class members will likely be small relative to the costs associated with prosecuting an action, especially given the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for individual class members to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual actions, it would still not be preferable to a class action because individual litigation would risk producing inconsistent results and increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer

management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On Behalf of Plaintiffs and the Prerecorded No Consent Class)**

54. Plaintiffs repeat and reallege paragraphs 1 through 54 of this Complaint and incorporate them here by reference.

55. Defendant (or a third-party acting on its behalf and for its benefit) made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiffs and the other members of the Prerecorded No Consent Class—without their prior express written consent—in an effort to generate leads for Defendant's products and services

56. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A)  By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B)  The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

57. Defendant made the calls using a prerecorded voice or similar technology.

58. By making unsolicited telephone calls to Plaintiffs and members of the Prerecorded No Consent Class's telephones without prior express consent, and by utilizing an artificial or pre-recorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

59. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Prerecorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

60. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Prerecorded No Consent Class.

## SECOND CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On Behalf of Plaintiffs and the DNC Registry Class)

61. Plaintiffs repeat and reallege paragraphs 1 through 54 of this Complaint and incorporate them here by reference.

62. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

64. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the DNC Registry Class members who registered their respective telephone numbers on the National Do Not Call

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

65. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the DNC Registry Class received more than one call in a twelve-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

66. As a result of Defendant's conduct as alleged herein, Plaintiffs and the DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

67. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Gibbs, Hoy, and McCullagh, on behalf of themselves and the Classes, respectfully request the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiffs as representatives of the Classes and appointing their counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set forth above, violate the TCPA;

C. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiffs and the Class members;

D. An injunction requiring Defendant to cease all unsolicited autodialed and prerecorded calling activities, and otherwise protecting the interests of the Classes;

E. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

F. An award of pre- and post-judgment interest; and

G. Such other and further relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: April 5, 2023

**JEFFERY GIBBS, TOBY HOY,** and **SHARON MCCULLAGH**, individually and on behalf of all others similarly situated,

By:  /s/ Patrick Kershisnik

**Patrick Kershisnik**
**Kershisnik Law, PLLC**
380 S. 4th Street, Ste. 102
Boise, Idaho 83702
Telephone: (208) 472-2383
Email: patrick@lawboiseid.com

Patrick H. Peluso*
Stephen A. Klein*
**WOODROW & PELUSO, LLC**
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Email: ppeluso@woodrowpeluso.com
            sklein@woodrowpeluso.com

*Counsel for Plaintiffs and the Putative Classes*

**Pro Hac Vice* to be sought